COMMONWEALTH *vs.* RHONDA ADJUTANT.

Suffolk. November 2, 2004. - March 14, 2005.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Homicide. Self-Defense. Evidence,* Self-defense, Relevancy and materiality, State of mind, Exculpatory, Prior violent conduct, Reputation.

This court concluded, based on common-law principles, that at a murder trial where the identity of the first aggressor is in dispute and the victim has a history of violence, the judge has the discretion to admit evidence of specific acts of prior violent conduct that the victim is reasonably alleged to have initiated, regardless of whether such conduct was known to the defendant at the time of the attack, where such evidence is offered to support the defendant's claim of self-defense; thus, at a murder trial where the defendant claimed self-defense, evidence of the past violent conduct of the victim, even though unknown to the defendant at the time of the killing, went directly to the heart of the case's central dispute (i.e., whether the victim was the initial aggressor in the altercation with the defendant that resulted in the death), and its exclusion was prejudicial to the defendant's claim and required reversal of the judgment and a new trial. [654-666] COWIN, J., dissenting.

INDICTMENT found and returned in the Superior Court Department on October 26, 1999.

The case was tried before *Regina L. Quinlan,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Chauncey B. Wood* for the defendant.

*Paul B. Linn,* Assistant District Attorney, for the Commonwealth.

CORDY, J. Following a jury trial, Rhonda Adjutant, a woman employed by an escort service, was found guilty of voluntary manslaughter for killing Stephen Whiting, a client of the service. In this appeal, Adjutant argues that evidence of Whiting's violent reputation and past conduct, even though unknown to her at the time of the killing, should have been admitted at her trial because it was relevant to her claim that Whiting was the

"first aggressor" in the altercation that resulted in his death, and that she acted in self-defense.

After surveying the state of the law in jurisdictions throughout the country, we are persuaded that evidence of a victim's prior violent conduct may be probative of whether the victim was the first aggressor where a claim of self-defense has been asserted and the identity of the first aggressor is in dispute.[1] Consequently, when such circumstances are present, we hold, as a matter of common-law principle, that trial judges have the discretion to admit in evidence specific incidents of violence that the victim is reasonably alleged to have initiated. While there is potential for confusion and prejudice inherent in the admission of this type of evidence, trial judges are well equipped to decide whether the probative value of the evidence proffered outweighs its prejudicial effect in the context of the facts and issues presented in specific cases.

In the present case, relying on language in past decisions of this court, see, e.g., *Commonwealth* v. *Graham*, 431 Mass. 282, 291 (2000); *Commonwealth* v. *Dilone*, 385 Mass. 281, 285-286 (1982), the judge ruled that she lacked the discretion to admit evidence of prior violent acts committed by Whiting but unknown to Adjutant. Because we conclude that the judge's ruling, while understandable, was prejudicial to Adjutant's claim that she acted in self-defense, we reverse the judgment and remand the case for a new trial.

1. *Background.* The evidence at trial was as follows. Adjutant worked as an escort for Newbury Cosmopolitan International Escort Service (Newbury). In the early morning of September 25, 1999, Whiting telephoned Newbury and requested an escort. The Newbury dispatcher told Whiting that he could receive a full body massage and one hour of an escort's company for $175. Whiting agreed to these terms, and arrangements were made for Adjutant to visit Whiting's home in Revere. Shortly thereafter, Adjutant was dropped off there by a driver and the dispatcher's boy friend (drivers). Whiting met her outside his building and accompanied her to his basement apartment.

Once inside, Whiting paid Adjutant, who then telephoned

---

[1] Indeed, such evidence may be the jury's only means of assessing the likelihood of the defendant's account of the incident in a homicide case.

Newbury to report that she had received payment. Adjutant testified that during and after the call Whiting snorted two lines of cocaine. Adjutant then offered to begin a massage. Whiting replied that he wanted intercourse and believed that he had paid for it. Adjutant denied that she was sent to have intercourse with him, and telephoned the Newbury dispatcher on her cellular telephone to inform her that Whiting wanted more than a massage. Adjutant then handed the phone to Whiting, and the dispatcher reminded him of the original terms. Whiting demanded a total refund, which neither the dispatcher nor Adjutant offered. When Whiting returned the telephone to Adjutant, the dispatcher told her to leave and agreed to stay on the line until Adjutant was out of the apartment.

There was conflicting testimony as to when the defendant and the victim armed themselves for their fatal confrontation. Adjutant testified that when she attempted to leave, Whiting pushed her onto his bed and retrieved a crowbar from the kitchen, at which point Adjutant picked up a knife that was lying on the bedside table, next to a plate of cocaine. The dispatcher, on the other hand, testified that while she was talking to Whiting, he said that Adjutant had a knife, and that when Adjutant then got back on the telephone with her, Adjutant said that Whiting was picking up a crowbar.

In any event, after arming himself, Whiting first slammed the crowbar on a counter and then swung it at Adjutant, striking her in the leg. She responded by nicking him in the face with the knife, drawing blood. Adjutant testified that she next tried to avert further confrontation by offering to begin again with a massage, but Whiting refused. Meanwhile, at Adjutant's urging, the dispatcher alerted Adjutant's drivers to return to Whiting's apartment. At this point, Adjutant testified that she attempted to run toward the door, but Whiting tackled her. During the struggle, Adjutant stabbed Whiting in the shoulder with the knife and moved away. Whiting, however, continued to block Adjutant's exit, while Adjutant screamed at him to stay back and threatened to cut him again if he came any closer.[2]

Within minutes, Adjutant's drivers returned to the scene,

---

[2] Adjutant's telephone was apparently on throughout the incident, and the dispatcher testified that she heard Adjutant say that Whiting was coming

heard her screams, and kicked in the door to the apartment. According to Adjutant, the moment one of the drivers kicked in the door, Whiting advanced on her with the crowbar raised, at which point she stabbed him in the neck, inflicting the fatal wound. Whiting did not immediately drop the crowbar or move away from the door. When he eventually did, Adjutant fled the apartment with the drivers, throwing down the knife and her telephone.[3] One of the drivers provided a different account of the fatal stabbing. He testified that after the door was kicked open, Whiting turned to face the drivers, at which point he saw Adjutant move toward Whiting and stab him in the neck in a straightforward thrusting motion. The medical examiner's testimony concerning the likely manner in which the fatal knife wound was inflicted was not entirely consistent with the driver's testimony.

Adjutant maintained at trial that all her actions were defensive and intended to help her escape the apartment. The jury's main task was determining whether Adjutant acted in self-defense. That inquiry required the jury to weigh Adjutant's credibility, as well as that of the dispatcher and the driver, and decide who moved first to attack the other during the last moments of the standoff. See *Commonwealth* v. *Kendrick*, 351 Mass. 203, 210-212 (1966).

In her defense, Adjutant focused on Whiting's intoxication and drug use that evening. The medical examiner testified at trial that Whiting had cocaine in his bloodstream, and that his blood alcohol level reflected his consumption of the equivalent of sixty ounces of beer or five ounces of whiskey. Two of Whiting's neighbors testified that, earlier that evening, Whiting appeared intoxicated and had made unsuccessful sexual advances toward women near the apartment building. Adjutant testified that she became terrified when her initial blows to Whiting did not seem to faze him, apparently because of his drugged condition.

During the trial, Adjutant's counsel sought to cross-examine

toward her and that she "would cut [him] from ear to ear" "if [he came] anywhere near [her]."

[3]A neighbor found Whiting's dead body in the doorway of the apartment several hours later and summoned police.

Whiting's neighbors about his previous violent behavior and reputation for violence. The judge sustained the prosecutor's objections to these questions and also barred testimony about Whiting's behavior while intoxicated, ruling that Whiting's violent past or reputation for violence was only relevant if Adjutant had been aware of them at the time of the stabbing.[4] When the prosecution subsequently elicited testimony that Whiting was "calm," "talked . . . very softly," and "sounded like a nice person" on the night of the incident, defense counsel moved for permission to "impeach" this testimony by evidence of Whiting's prior acts of aggression. The judge denied the motion, except insofar as to permit Adjutant to introduce percipient witness testimony to Whiting's previous use of a crowbar. No such witnesses were called.[5]

At the conclusion of the trial, the jury convicted Adjutant of voluntary manslaughter.[6] She appealed and the Appeals Court affirmed the conviction. *Commonwealth* v. *Adjutant*, 60 Mass. App. Ct. 1107 (2003). We granted her application for further appellate review limited to whether the trial judge erred in

---

[4]In connection with Adjutant's sentencing, evidence of three violent acts committed by Whiting while he was intoxicated and within three months of his death was presented to the court. In one of the instances, Whiting, while on cocaine, allegedly chased after his neighbor "like a raging bull" when confronted about vandalizing the common yard. In another, he allegedly threatened two neighbors with a butcher knife. And in the third, he allegedly threw boiling water on a friend with whom he was arguing. We leave it to the judge before whom the case will be retried to determine whether these or any other alleged violent acts of the victim are incidents which he likely initiated and are more probative than prejudicial.

[5]According to the transcript of the in limine motion on this evidence, the defendant sought to show that Whiting was involved in a cocaine purchase at some point less than a year before he died in which he let his dealer see that he had much more money than necessary for the transaction. The dealer returned later with another man, both wearing masks and carrying a baseball bat and a pipe. They entered Whiting's apartment and assaulted him, demanding his money. Whiting responded by attacking them with a crowbar, refusing to back down despite being completely outmatched. The assailants seized the money and left Whiting near death. Whiting eventually filed a police report and gave grand jury testimony, detailing the combat.

[6]Adjutant was indicted for murder in the second degree. After the jury returned their verdict of guilty on so much of the indictment as charged voluntary manslaughter, Adjutant was sentenced to a term of from nine to twelve years in State prison.

concluding that she had no discretion to admit Adjutant's proffered evidence and consequently excluding it.

2. *Discussion.* In almost every American jurisdiction, evidence of a victim's violent character may be admitted to support an accused's claim of self-defense under two distinct theories. First, it may be admitted to prove that at the time of the assault the defendant was reasonably apprehensive for his safety, and used a degree of force that was reasonable in light of the victim's violent tendencies. Because such evidence is relevant to the defendant's state of mind (the subjective reasonableness of his apprehension and actions), a predicate to its admissibility is the defendant's prior knowledge of it. Second, it may be admitted as tending to prove that the victim and not the defendant was likely to have been the "first aggressor," where there is a dispute as to who initiated the attack. Under the first theory, the evidence is not admitted for the purpose of showing that the victim acted in conformance with his character for violence; under the second theory, it is.

Massachusetts has long followed the evidentiary rule that permits the introduction of evidence of the victim's violent character, if known to the defendant, as it bears on the defendant's state of mind and the reasonableness of his actions in claiming to have acted in self-defense. See *Commonwealth* v. *Edmonds*, 365 Mass. 496, 502 (1974) (victim's reputation as violent person admissible). See also *Commonwealth* v. *Fontes*, 396 Mass. 733, 735-736 (1986) (instances of victim's prior acts of violence admissible). This court has not, however, had occasion to rule on the second theory, raised in this case, regarding the use of such evidence to prove who was the first aggressor. *Id.* at 736 n.1 ("It should be recognized that we are not considering here the admission of evidence of general reputation or of specific incidents of violence to show that the victim was, or was likely to have been, the aggressor").

Under Rules 404 and 405 of the Federal Rules of Evidence, all Federal courts now permit the introduction of evidence of the victim's violent character to support a defendant's self-

defense claim that the victim was the first aggressor.[7] Similarly, appellate courts in forty-five of the forty-eight State jurisdictions that have considered the issue have decided that some form of such evidence is properly admissible on the first aggressor issue, regardless whether the victim's violent character was known to the defendant at the time of the assault.[8] The two

[7]The Federal Rules of Evidence make an explicit exception to their general exclusion of character evidence as propensity evidence when "[e]vidence of a pertinent trait of character of the alleged victim of the crime [is] offered by an accused . . . ." Fed. R. Evid. 404(a)(2). The circuit courts of the United States Court of Appeal that have considered the issue are unanimous that Fed. R. Evid. 404(a)(2) allows the introduction of character evidence to show the victim's violent propensity if the identity of the first aggressor is in dispute, regardless whether the defendant knew of the victim's propensity for violence. See *United States* v. *Emeron Taken Alive*, 262 F.3d 711, 714 (8th Cir. 2001); *United States* v. *Smith*, 230 F.3d 300, 307 (7th Cir. 2000), cert. denied, 531 U.S. 1176 (2001), citing *United States* v. *Greschner*, 647 F.2d 740, 742 (7th Cir. 1981); *United States* v. *Bautista*, 145 F.3d 1140, 1152 (10th Cir.), cert. denied, 525 U.S. 911 (1998); *United States* v. *Keiser*, 57 F.3d 847, 855 (9th Cir.), cert. denied, 516 U.S. 1029 (1995); *United States* v. *Piche*, 981 F.2d 706, 713 (4th Cir. 1992), cert. denied, 508 U.S. 916 (1993); *Lagasse* v. *Vestal*, 671 F.2d 668, 669 (1st Cir.), cert. denied, 457 U.S. 1122 (1982).

[8]Both jurisdictions that have adopted the Federal Rules of Evidence and jurisdictions that have not affirm the admissibility of some form of character evidence to show the likelihood that the victim was the first aggressor. *White* v. *State*, 294 Ala. 265, 273, cert. denied, 423 U.S. 951 (1975); *McCracken* v. *State*, 914 P.2d 893, 898 (Alaska Ct. App. 1996); *State* v. *Santanna*, 153 Ariz. 147, 149 (1987); *McClellan* v. *State*, 264 Ark. 223, 225-226 (1978); *People* v. *Wright*, 39 Cal. 3d 576, 587 (1985); *People* v. *Ferguson*, 43 P.3d 705, 710 (Colo. Ct. App. 2001); *State* v. *Smith*, 222 Conn. 1, 17, cert. denied, 506 U.S. 942 (1992); *Rawls* v. *United States*, 539 A.2d 1087, 1089 (D.C. 1988); *Smith* v. *State*, 606 So. 2d 641, 642-643 (Fla. Dist. Ct. App. 1992) *Chandler* v. *State*, 261 Ga. 402, 407 (1991); *State* v. *Basque*, 66 Haw. 510, 513-515 (1983); *State* v. *Custodio*, 136 Idaho 197, 203 (Ct. App. 2001); *People* v. *Lynch*, 104 Ill. 2d 194, 200 (1984); *Teague* v. *State*, 269 Ind. 103, 115-116 (1978); *State* v. *Dunson*, 433 N.W.2d 676, 680 (Iowa 1988); *State* v. *Deavers*, 252 Kan. 149, 156-157 (1992), cert. denied, 508 U.S. 978 (1993); *Boyle* v. *Commonwealth*, 694 S.W.2d 711, 713 (Ky. Ct. App. 1985); *State* v. *Edwards*, 420 So. 2d 663, 669 (La. 1982); *Thomas* v. *State*, 301 Md. 294, 306-307 (1984), cert. denied, 470 U.S. 1088 (1985); *People* v. *Stallworth*, 364 Mich. 528, 536 (1961); *State* v. *Irby*, 368 N.W.2d 19, 23 (Minn. Ct. App. 1985); *Aguilar* v. *State*, 847 So. 2d 871, 879 (Miss. Ct. App. 2002); *State* v. *Sattler*, 288 Mont. 79, 95 (1998); *State* v. *Lewchuk*, 4 Neb. App. 165, 175 (1995); *Daniel* v. *State*, 78 P.3d 890, 901 (Nev. 2003), cert. denied, 541 U.S. 1045 (2004); *State* v. *Newell*, 141 N.H. 199, 201 (1996); *State* v. *Aguiar*, 322 N.J. Super. 175, 183-184 (1999); *State* v. *Baca*, 114 N.M. 668, 671-672 (1992); *State* v. *Watson*, 338 N.C. 168, 187-188 (1994), cert. denied, 514 U.S. 1071 (1995); *State* v. *McIntyre*, 488

States that have not considered the matter have both adopted versions of Federal Rules of Evidence[9] that would appear to permit the introduction of such evidence. Of the three State appellate courts that have declined to follow the modern trend, two did so over vigorous dissents.[10]

The basis of the overwhelming trend toward admitting some form of this evidence can be found in the view that evidence reflecting the victim's propensity for violence has substantial probative value and will help the jury identify the first aggressor when the circumstances of the altercation are in dispute. *People* v. *Lynch*, 104 Ill. 2d 194, 200 (1984). See, e.g., *United States* v. *Burks*, 470 F.2d 432, 434-435 (D.C. Cir. 1972) (evidence of deceased's violent character relevant and admissible where evidence "inconsistent" on identity of aggressor

N.W.2d 612, 616 (N.D. 1992); *State* v. *Barnes*, 94 Ohio St. 3d 21, 24 (2002); *Harris* v. *State*, 400 P.2d 64, 70 (Okla. Crim. App. 1965); *State* v. *Lotches*, 331 Or. 455, 489 (2000), cert. denied, 534 U.S. 833 (2001); *Commonwealth* v. *Beck*, 485 Pa. 475, 478 (1979); *State* v. *Dellay*, 687 A.2d 435, 438 (R.I. 1996); *State* v. *Latham*, 519 N.W.2d 68, 71 (S.D. 1994); *State* v. *Furlough*, 797 S.W.2d 631, 649 (Tenn. Crim. App. 1990); *Tate* v. *State*, 981 S.W.2d 189, 192-193 (Tex. Crim. App. 1998); *State* v. *Howell*, 649 P.2d 91, 96 (Utah 1982); *Jordan* v. *Commonwealth*, 219 Va. 852, 855 (1979); *State* v. *Roy*, 151 Vt. 17, 30-31 (1989); *State* v. *Kelly*, 102 Wash. 2d 188, 193-194 (1984); *State* v. *Boggess*, 204 W. Va. 267, 275-276 (1998); *Werner* v. *State*, 66 Wis. 2d 736, 744 n.6 (1975); *Edwards* v. *State*, 973 P.2d 41, 45-46 (Wyo. 1999).

[9]Delaware and South Carolina. See Del. Uniform R. Evid. 404(a)(2) (2005); S.C. R. Evid. 404(a)(2) (1995).

[10]*State* v. *Johns*, 34 S.W.3d 93, 111 (Mo. 2000), cert. denied, 532 U.S. 1012 (2001); *State* v. *Leone*, 581 A.2d 394 (Me. 1990); *Matter of Robert S.*, 52 N.Y.2d 1046, 1048 (1981), citing *People* v. *Rodawald*, 177 N.Y. 408 (1904), and *People* v. *Miller*, 39 N.Y.2d 543, 551 (1976). The dissents in the Maine and New York cases highlighted the relevance of evidence of the victim's violent character and made reference to the modern trend favoring the admission of such evidence. See *State* v. *Leone, supra* at 402 (Glassman, J., dissenting) (evidence of victim's past aggression "highly probative" and "[i]t was for the jury to determine the credibility of and the weight to be given this evidence in deciding whether [the defendant] was guilty of murder or manslaughter or not guilty because he acted in self-defense"); *Matter of Robert S., supra* at 1049 (Fuchsberg, J., dissenting) (exclusion of victim's long history of aggressive behavior and violence when intoxicated "deprived [the defendant] of proof which went to the heart of his guilt or innocence"). In addition, the New York rule has been specifically criticized, but found not to transgress a defendant's constitutional right to a fair trial. See *Williams* v. *Lord*, 996 F.2d 1481, 1484-1485 (2d Cir. 1993) (Cardamone, J., concurring), cert. denied, 510 U.S. 1120 (1994).

"[i]n order to corroborate" defendant's account); *State* v. *Griffin*, 99 Ariz. 43, 46-47 (1965), quoting *Mendez* v. *State*, 27 Ariz. 82, 84 (1924), ("It is the rule that where it is questionable as to which was the aggressor . . . the general reputation of the deceased as a dangerous, turbulent, and violent man may always be shown"). "Evidence probative of the victim's reputation for violence is highly relevant and admissible to show . . . that the victim was the aggressor in a case in which self-defense is raised." *State* v. *Soto*, 477 A.2d 945, 949 (R.I. 1984). See *United States* v. *Greschner*, 647 F.2d 740, 741 (7th Cir. 1981) (" 'violent character' line of proof is relevant to the defendant's theory of self-defense in that it makes his version that the victim attacked him 'more probable' "). See also *State* v. *Dellay*, 687 A.2d 435, 438 n.1 (R.I. 1996) (noting scientific evidence for and against "premise for character evidence is that personality may be defined in terms of traits that produce consistent forms of behavior"); *Lolley* v. *State*, 259 Ga. 605, 609-610 (1989) (Weltner, J., concurring), quoting *Henderson* v. *State*, 234 Ga. 827, 830 (1975) ("It is more probable that a person will act in accordance with his character [disposition] than that he will act contrary to it"); *United States* v. *Keiser*, 57 F.3d 847, 853 (9th Cir.), cert. denied, 516 U.S. 1029 (1995) (whether victim was man with history and reputation for violence makes it "more likely that his behavior on the night of the [incident] was violent — which supports the defendant's defense. . . — than it would be if [the victim] were peaceable"). In the words of Professor Wigmore, "When the issue of self-defense is made in a trial for homicide, and thus a controversy arises *whether the deceased was the aggressor*, one's persuasion will be more or less affected by the character of the deceased; it may throw much light on the probabilities of the deceased's action." 1 J. Wigmore, Evidence § 63, at 467 (3d ed. 1940).

There can be no doubt that at least some of the proffered evidence in this case was relevant to Adjutant's self-defense claim.[11] Whether Whiting was a violent man, prone to aggression when intoxicated or under the influence of drugs, "throws

[11]"The relevance threshold for the admission of evidence is low." *Commonwealth* v. *Arroyo*, 442 Mass. 135, 144 (2004). "Evidence is relevant if it has a 'rational tendency to prove an issue in the case,' *Commonwealth* v. *La-*

light" on the crucial question at the heart of Adjutant's self-defense claim — who attacked first in the final moments before the fatal stabbing. *Commonwealth* v. *Woods*, 414 Mass. 343, 356, cert. denied, 510 U.S. 815 (1993), quoting *Commonwealth* v. *Palladino*, 346 Mass. 720, 726 (1964). The evidence, if admitted, would have supported the inference that Whiting, with a history of violent and aggressive behavior while intoxicated, probably acted in conformity with that history by attacking Adjutant, and that the defendant's story of self-defense was truthful. *State* v. *Miranda*, 176 Conn. 107, 113-114 (1978).[12]

The Commonwealth argues that juries invariably will be distracted by information about the victim's unrelated prior violence. We disagree. This court has previously approved the admission of evidence of a victim's history of violence, when known to the defendant. *Commonwealth* v. *Fontes*, 396 Mass. 733, 736 n.1 (1986). If juries are capable of receiving such evidence for the limited purpose of evaluating the reasonableness of a defendant's apprehension, they are capable of weighing similar evidence relevant to the first aggressor issue. While we acknowledge that there is a possibility that juries may misunderstand the purpose for which the evidence is offered, and agree that they should be specifically instructed on that point, the greater danger here is prejudice to the defendant's case. We share the preference of the Supreme Court of Illinois that the jury should have as complete a picture of the (often

*Corte*, 373 Mass. 700, 702 (1977), or render a 'desired inference more probable than it would be [otherwise].' *Commonwealth* v. *Fayerweather*, 406 Mass. 78, 83 (1989). It 'need not establish directly the proposition sought; it must only provide a link in the chain of proof.' *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 744 (1990), quoting *Commonwealth* v. *Tobin*, 392 Mass. 604, 613 (1984)." *Commonwealth* v. *Sicari*, 434 Mass. 732, 750-751 (2001), cert. denied, 534 U.S. 1142 (2002). Within this context, we disagree with the assertion of the dissent that a victim's history of aggression "*has no direct connection to the case at hand* and is relevant to nothing but a victim's general tendency toward violence." *Post* at 668. To the contrary, that history is probative, but certainly not determinative, of whether the victim was the first aggressor where the defendant claims self-defense.

[12]We note that evidence of Whiting's prior use of a crowbar to defend himself, see note 5, *supra*, is one part of Adjutant's proffer that may not meet the criteria that we have set forth in this opinion for evidence admissible on the first aggressor issue.

fatal) altercation as possible before deciding on the defendant's guilt:

> "[T]he evidence of what happened here, as is often the case where self-defense is raised, is both incomplete and conflicting. Everything happened in an instant . . . . The witnesses could hardly analyze the scene in any great detail, or remember and describe it with precision. They could only form quick impressions. To decide what really occurred the jury needed all the available facts, including evidence of [the victim's prior violence]. We hold that when the theory of self-defense is raised, the victim's aggressive and violent character is relevant to show who was the aggressor, and the defendant may show it by appropriate evidence, regardless of when he learned of it."

*People* v. *Lynch*, 104 Ill. 2d 194, 200 (1984).

Moreover, admission of evidence showing the victim's prior violent acts on the first aggressor issue reflects the principle that "in criminal cases there is to be greater latitude in admitting exculpatory evidence than in determining whether prejudicial potentialities in proof offered to show guilt should result in its exclusion." *Matter of Robert S.*, 52 N.Y.2d 1046, 1053 (1981) (Fuchsberg, J., dissenting), citing 1 J. Wigmore, Evidence § 194 (3d ed. 1940) (criticizing New York rule excluding victim's specific acts of violence to show propensity).[13] "Where the victim's propensity for violence is in question . . . the danger of prejudice to the defendant lies in refusing to admit such evidence." *People* v. *Lynch, supra* at 201. See *State* v. *Wilson*, 236 Iowa 429, 443 (1945) ("The admission of this testimony was especially important to the [defendant], and for that reason its rejection was especially prejudicial to him. For if the homicide was justifiable because [the defendant] struck in self-defense, no crime was committed"). In this case, the judge's exclusion of evidence of Whiting's prior acts of violence kept from the jury relevant and

---

[13]Another example of this principle is the right of criminal defendants to introduce evidence of relevant traits of their own character to create a reasonable doubt of guilt. *Commonwealth* v. *Walker*, 442 Mass. 185, 198 (2004), and cases cited. See also *Michelson* v. *United States*, 335 U.S. 469, 476-477 (1948).

potentially exculpatory information about the probability that Whiting attacked Adjutant first in their final altercation.

Notwithstanding our usual hesitation to allow the admission of character evidence to prove conduct, see P.J. Liacos, M.S. Brodin, & M. Avery, Evidence § 4.4.1, at 130 (7th ed. 1999),[14] we are persuaded that some form of evidence tending to show the victim's violent character should be admissible for the limited purpose of supporting the defendant's self-defense claim that the victim was the first aggressor. We now turn to the separate question of the permissible form of such evidence.

The defendant urges the court to allow the admission of

---

[14]The root of this hesitation is not grounded in concern about the evidence's relevance, but in its potential for prejudice. That potential is especially acute in a criminal case, where safeguards are necessary to ensure that the jury do not convict a defendant for his past malevolence or for conduct unrelated to the crime with which he has been charged. For example:

> "It is well settled that the prosecution may not introduce evidence that a defendant previously has misbehaved, indictably or not, for the purposes of showing his bad character or propensity to commit the crime charged, but such evidence may be admissible if relevant for some other purpose. . . . Such evidence can be highly prejudicial to the defendant, and therefore must be excluded unless it comes within one of the permitted uses, such as to show a common scheme, pattern of operation, absence of accident or mistake, identity, intent, or motive." (Citations omitted.)

*Commonwealth* v. *Helfant*, 398 Mass. 214, 224 (1986). See *Commonwealth* v. *Jackson*, 132 Mass. 16, 20-21 (1882) ("The objections to the admission of evidence as to other transactions, whether amounting to indictable crimes or not, are very apparent. Such evidence . . . confuses him in his defence, raises a variety of issues, and thus diverts the attention of the jury from the one immediately before it; and, by showing the defendant to have been a knave on other occasions, creates a prejudice which may cause injustice to be done him"); 1A J. Wigmore, Evidence § 57, at 1185 (Tillers rev. ed. 1983) ("The deep tendency of human nature to punish not because [the defendant] is guilty this time but because he is a bad man and may as well be condemned now that he is caught is a tendency that cannot fail to operate with any jury, in or out of court"). Despite the applicability of this principle to evidence reflecting the character of defendants, it does not apply with the same force to evidence of a victim's character, as the victim is not on trial. See, e.g., *State* v. *Basque*, 66 Haw. 510, 514 (1983); *People* v. *Lynch*, 104 Ill. 2d 194, 201 (1984). Because of this distinction, we find unpersuasive the dissent's invocation of the rule excluding evidence showing the defendant's propensity for violence. See *post* at 669, citing *Commonwealth* v. *Stone*, 321 Mass. 471, 473 (1947).

evidence both of the victim's violent reputation and of his specific violent acts. The Commonwealth argues that if the court permits character evidence to be admitted, it should be limited to specific acts of violence committed by the victim. All other State jurisdictions that admit character evidence in these circumstances admit reputation evidence. Some of these States also admit evidence of specific violent acts.[15]

The arguments against admitting specific violent acts include (1) the danger of ascribing character traits to a victim with proof of isolated incidents, (2) the worry that jurors will be invited to acquit the defendant on the improper ground that the victim deserved to die, (3) the potential for wasting time trying collateral questions surrounding the victim's past conduct, (4) the unfair difficulty of rebuttal by the prosecution, and (5) the strategic imbalance that flows from the inability of prosecutors to introduce similar evidence of the defendant's prior bad acts. See *Chandler* v. *State*, 261 Ga. 402, 409 (1991) (Benham, J., concurring specially); *Henderson* v. *State*, 234 Ga. 827, 829 (1975); *State* v. *Jacoby*, 260 N.W.2d 828, 838 (Iowa 1977); *Williams* v. *State*, 565 S.W.2d 503, 505 (Tenn. 1978). See also Note, A New Understanding of Specific Act Evidence in Homicide Cases Where the Accused Claims Self-Defense: Striking the Proper Balance Between Competing Policy Goals, 32 Ind. L. Rev. 1437, 1447-1448 (1999). Many courts that follow the Federal Rules of Evidence rely on the Federal Rules

---

[15]Rules 404 and 405 of the Federal Rules of Evidence and similar State rules permit the defendant to introduce reputation and opinion evidence, but not specific acts of violence, to prove the victim's violent character. See, e.g., *United States* v. *Keiser*, 57 F.3d 847, 857 (9th Cir. 1995); *State* v. *McIntyre*, 488 N.W.2d 612, 616-617 (N.D. 1992). Despite this dominant interpretation of the Federal Rules of Evidence, some State courts have held that the victim's character is an "essential element" of a defendant's self-defense claim, allowing the use of specific acts evidence under the State equivalent of Fed. R. Evid. 405 (b). See, e.g., *State* v. *Dunson*, 433 N.W.2d 676, 680-681 (Iowa 1988); *State* v. *Baca*, 114 N.M. 668, 671-673 (1992). Other States with versions of the Federal Rules of Evidence have crafted a compromise rule allowing evidence of the victim's specific acts only in the form of convictions. See, e.g., *State* v. *Miranda*, 176 Conn. 107, 113-114 (1978); *State* v. *Howell*, 649 P.2d 91, 96 (Utah 1982). Jurisdictions that have not adopted the Federal Rules of Evidence are split on the issue. Compare *People* v. *Wright*, 39 Cal. 3d 576, 587-588 (1985), and *People* v. *Lynch*, 104 Ill.2d 194, 200 (1984), with *State* v. *Waller*, 816 S.W.2d 212, 216 (Mo. 1991), and *Matter of Robert S.*, 52 N.Y.2d 1046, 1048 (1981).

advisory committee's note's succinct rationale for exclusion: "Of the three methods of proving character [reputation, opinion, and specific instances of conduct,] evidence of specific instances of conduct is the most convincing. At the same time it possesses the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time." Advisory Committee's Note, Fed. R. Evid. 405, 56 F.R.D. 183, 222 (1972). See *United States v. Smith*, 230 F.3d 300, 308 (7th Cir. 2000), cert. denied, 531 U.S. 1176 (2001); *United States v. Keiser*, 57 F.3d 847, 855 n.16 (9th Cir. 1995); *Daniel v. State*, 78 P.3d 890, 901 (Nev. 2003).

While we acknowledge the validity of these concerns, we disagree that they require an unbending rule excluding all of the victim's specific acts of violence when relevant to the identity of the first aggressor.[16] This court rejected similar arguments in *Commonwealth v. Fontes*, 396 Mass. 733, 736-737 (1986), and approved the admission of such evidence when relevant to the defendant's reasonable apprehension of imminent bodily harm.[17] Testimony about the victim's prior acts of violence can be convincing and reliable evidence of the victim's propensity for violence. See, e.g., *State v. Miranda*, 176 Conn. 107, 113-114 (1978); *Lolley v. State*, 259 Ga. 605, 608-610 (1989) (Weltner, J., concurring); *People v. Lynch*, 104 Ill. 2d 194, 201-202

[16]Although the dissent is correct to point out that the current rule of exclusion is tempered by the range of evidence about victims some defendants may introduce in support of self-defense claims, a defendant like Adjutant, who did not know of the victim's history of aggression, has no "ample opportunity to examine [the] victim's past" and does face an "unbending rule" of exclusion. *Post* at 674.

[17]We find particularly unpersuasive the suggestion that juries cannot be trusted with evidence about the victim's prior acts of violence. Cf. *Commonwealth v. Fontes*, 396 Mass. 733, 737 (1986) ("A jury . . . should in fairness have that information"). In this respect, we reject the dissent's implication that juries will be unable to "wade through multiple incidents of violence" and to interpret such evidence without being overwhelmed by the urge to sanction the victims' deaths. *Post* at 673. See *Matter of Robert S., supra* at 1052 (Fuchsberg, J., dissenting), quoting *Havas v. Victory Paper Stock Co.*, 49 N.Y.2d 381, 386 (1980) (rule of excluding such evidence flows from "fear that evidence of propensity will be misapplied by a jury to license criminal conduct against an unworthy victim . . . [and] the mistaken and, indeed, entirely unempirical assumption that modern juries . . . are 'bereft of educated and intelligent persons who can be expected to apply their ordinary judgment and practical experience' ").

(1984); *Commonwealth* v. *Beck,* 485 Pa. 475, 478-479 (1979).
Such evidence becomes relevant to the first aggressor issue
when the prior acts of violence demonstrate a propensity for
initiating violence. "Such instances may be very significant;
their number can be controlled by the trial court's discretion;
and the prohibitory considerations applicable to an accused's
character . . . have here little or no force." 1A J. Wigmore,
Evidence § 63.1, at 1382 (Tillers rev. ed. 1983). See Annot., 1
A.L.R.3d 571, 601 (1965).

In general, "[r]elevant evidence is admissible unless unduly
prejudicial, and, '[i]n weighing the probative value of evidence
against any prejudicial effect it might have on a jury, we afford
trial judges great latitude and discretion . . . .' " *Com-
monwealth* v. *Arroyo,* 442 Mass. 135, 144 (2004), quoting *Com-
monwealth* v. *Sicari,* 434 Mass. 732, 752 (2001), cert. denied,
534 U.S. 1142 (2002). When the prosecution seeks to introduce
evidence of the defendant's prior bad acts to show a common
scheme, pattern of operation, absence of accident or mistake,
identity, intent, or motive, the trial judge must weigh the acts'
probative value and the potential for prejudice to the defendant.
*Commonwealth* v. *Marshall,* 434 Mass. 358, 366 (2001). *Com-
monwealth* v. *Snell,* 428 Mass. 766, 777, cert. denied, 527 U.S.
1010 (1999). Similarly, when the prosecution seeks to impeach
a defendant's testimony with his prior convictions, the trial
judge has discretion to admit those convictions, so long as they
are noncumulative and probative of the defendant's truthfulness.
*Commonwealth* v. *Leftwich,* 430 Mass. 865, 869 (2000).

We are persuaded that the sound discretion of trial judges to
exclude marginally relevant or grossly prejudicial evidence can
prevent the undue exploration of collateral issues. See, e.g.,
*State* v. *Miranda, supra* at 114; *State* v. *Baca,* 114 N.M. 668,
673 (1992). It is for the trial judge to evaluate the proffered
evidence's probative value and admit so much of that evidence
as is noncumulative and relevant to the defendant's self-defense
claim.[18] See *People* v. *Wright,* 39 Cal. 3d 576, 587 (1985)
(upholding judge's discretionary exclusion of specific acts when

---

[18]The dissent asserts that judicial discretion here amounts to "little more
than a false hope" because trial judges will only rarely "risk reversal in order
to exclude specific act evidence." *Post* at 677. To the contrary, decisions of

"of little if any probative value"); *State* v. *Miranda, supra*; *State* v. *Basque*, 66 Haw. 510, 515 (1983); *State* v. *Baca, supra* (notwithstanding rule allowing admission of victim's specific acts of violence, "trial court could very well have excluded the evidence based on its relative lack of probative value"). In addition, through their instructions, trial judges should mitigate the dangers of prejudice and confusion inherent in introducing evidence of the victim's specific acts of violence by delineating the precise purpose for which the evidence is offered.

For these reasons, where the identity of the first aggressor is in dispute and the victim has a history of violence, we hold that the trial judge has the discretion to admit evidence of specific acts of prior violent conduct that the victim is reasonably alleged to have initiated, to support the defendant's claim of self-defense.

With respect to the usefulness of reputation evidence in the context of establishing who was the first aggressor, we are presently of a different view. While such evidence may be quite probative in evaluating a defendant's subjective state of mind, and the reasonableness of the actions thereby taken to defend himself, it is far less reliable in the present context. Reputation evidence is often "opinion in disguise." Advisory Committee's Note, Fed. R. Evid. 405, 56 F.R.D. 183, 222 (1972). We do not allow the admission of the private opinions of individual witnesses as character evidence. See *Commonwealth* v. *Connolly*, 356 Mass. 617, 626, cert. denied, 400 U.S. 843 (1970). See also *Commonwealth* v. *Belton*, 352 Mass. 263, 269, cert. denied, 389 U.S. 872 (1967) (defendant prohibited from introducing character evidence of his peacefulness in form of private opinions). Reputations or opinions are often formed based on rumor or other unreliable hearsay sources, without any personal knowledge on the part of the person holding that opinion. See Advisory Committee's Note, Fed. R. Evid. 405, *supra*, quoting

---

trial judges to admit or exclude such evidence, as with many evidentiary rulings, will be upheld unless we find an abuse of discretion. See *Commonwealth* v. *Arroyo*, 442 Mass. 135, 144 (2004). On balance, we conclude that the authority afforded to judges to limit or exclude such evidence will help prevent defendants from unfairly suggesting the kind of improper inferences about victims' characters raised by the dissent. *Post* at 668-669.

7 J. Wigmore, Evidence § 1986 (describing reputation evidence as "secondhand, irresponsible product of multiplied guesses and gossip"). In this case, had Adjutant offered the testimony of Whiting's neighbors that Whiting was known to be a violent man, without the corroborating details of the victim's specific acts, such evidence would have been little more than a few neighbors' accumulated opinions. Juries should have the ability to draw their own inferences in assessing the bearing of the victim's prior violent conduct on the probability that he was the first aggressor.

Jurisdictions that exclude the victim's specific acts of violence and admit reputation evidence make that choice because reputation evidence is filtered, general in nature, with less potential to inflame or sidetrack the proceedings than evidence of the victim's specific acts — in essence, because such evidence is less "convincing" and thus less controversial. See Advisory Committee's Note, Fed. R. Evid. 405, *supra* ("When character is used circumstantially and hence occupies a lesser status in the case, proof may be only by reputation and opinion"); McCormick, Evidence § 186, at 650 (5th ed. 1999) ("As one moves from the specific to the general in this fashion, the pungency and persuasiveness of the evidence declines ... ."). Given our rationale for allowing the admission of prior acts of violent conduct initiated by the victim, we favor the admission of concrete and relevant evidence of specific acts over more general evidence of the victim's reputation for violence. Evidence of specific acts also lends itself more readily to the necessary weighing of probative value against prejudicial effect in the factual context of particular cases.

While constrained by the trial judge's sound discretion, the defendant's ability to introduce evidence of the victim's prior history as a violent aggressor should also be matched with safeguards for prosecutors. See, e.g., 1A J. Wigmore, Evidence § 63, at 1369-1373 (Tillers rev. ed. 1983); *Chandler* v. *State*, 261 Ga. 402, 407-408 (1991). A defendant who intends to introduce evidence of the victim's specific acts of violence to support a claim that the victim was the first aggressor must provide notice to the court and the Commonwealth of such intent and of the specific evidence he intends to offer. This

notice must come sufficiently prior to trial to permit the Commonwealth to investigate and prepare a rebuttal. The prosecutor, in turn, must provide notice to the court and the defendant of whatever rebuttal evidence he or she intends to offer at trial.[19]

Applying these rules to the proceedings in this case could have led to the introduction of some of the proffered evidence of Whiting's prior acts of violence. "Nonconstitutional errors, preserved or resurrected below, are reviewed according to a nonprejudicial error standard." *Commonwealth* v. *Vinnie*, 428 Mass. 161, 163, cert. denied, 525 U.S. 1007 (1998). We cannot say that the judge's exclusion of the evidence was nonprejudicial. See *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994). "The essential question is whether the [erroneously admitted evidence] had, or might have had, an effect on the jury and whether [it] contributed to or might have contributed to the verdicts." *Commonwealth* v. *Perrot*, 407 Mass. 539, 549 (1990). Here, the proffered evidence went directly to the heart of the case's central dispute — whether Whiting was the initial aggressor in his final altercation with Adjutant. Given the probative value of the excluded evidence, it may have been enough to create reasonable doubt of the defendant's guilt. Although the judge might properly have excluded the evidence within her discretion after weighing its probative value against its prejudicial effect, we do not speculate as to what the judge would have done had she recognized her discretion. "Where the record shows that the judge has failed to exercise discretion, there exists an error of law requiring reversal." *Commonwealth* v. *Boyer*, 400 Mass. 52, 57 (1987).

---

[19]We need not decide in this case whether the Commonwealth may introduce evidence of prior violent incidents initiated by the defendant once the defendant has done so with respect to the victim, for the purpose of proving who was the first aggressor. We note that Fed. R. Evid. 404(a)(1) was amended in 2000, opening the door to the admission of such evidence once the accused attacks the character of the victim for this purpose, making clear that the accused cannot simultaneously attack the alleged victim's character and yet remain shielded from the disclosure of equally relevant evidence concerning his own same character trait. 192 F.R.D. 340, 414 (2000). At a minimum, once evidence of the victim's violent conduct is admitted, the prosecutor may introduce evidence of the victim's peaceful propensities. See *Commonwealth* v. *Lapointe*, 402 Mass. 321, 325 (1988). See, e.g., Fed. R. Evid. 404(a)(2); 1A J. Wigmore, Evidence § 63, at 1369 (Tillers rev. ed. 1983); 2 J. Wigmore, Evidence § 246, at 59-60 (Tillers rev. ed. 1983).

3. *Conclusion.* This opinion adopts a new common-law rule of evidence. Because the defendant alleged the error and argued for the rule on direct appeal, she should have the benefit of this decision. Otherwise, it shall apply only prospectively. *Commonwealth* v. *Dagley,* 442 Mass. 713, 721 n.10 (2004).

The judgment against the defendant is reversed, the verdict is set aside, and the case is remanded to the Superior Court for a new trial and further proceedings consistent with this opinion.

*So ordered.*

COWIN, J. (dissenting). The court today holds that a "victim's prior violent conduct may be probative in determining whether the victim was the first aggressor where a claim of self-defense has been asserted and the identity of the first aggressor is in dispute."[1] *Ante* at 650. In particular, the court creates a new rule of evidence in which prior acts of violence "reasonably alleged to have [been] initiated" by a victim, and unknown to a defendant, may be admitted to establish a victim's tendency toward violence. *Id.* Because I believe that past acts of violence by a victim, unknown to a defendant, do little to help a jury resolve the issue whether a *defendant* was the first aggressor and have no place in our consideration of a defendant's guilt or innocence, I respectfully dissent.

It has long been the rule in the Commonwealth that "evidence of a person's character is not admissible to prove that [that person] acted in conformity with that character on a particular occasion." P.J. Liacos, M.S. Brodin, & M. Avery, Massachusetts Evidence § 4.4.1, at 130 (7th ed. 1999) (Liacos). See *Commonwealth* v. *Baker,* 440 Mass. 519, 529-530 (2003). Consistent with this guiding principle, we allow juries to consider evidence of a victim's prior acts of violence or reputation for violence, provided that the defendant knew about such acts or reputation at the time of the altercation. See *Commonwealth* v. *Fontes,* 396 Mass. 733, 733-734 (1986); *Commonwealth* v. *Edmonds,* 365

---

[1]Although today's rule applies *only* where "the identity of the first aggressor is in dispute," *ante* at 664, it would not be surprising if, after today, we find an increasing number of trials where defendants assert such disputes.

Mass. 496, 502 (1974). This "known" evidence bears directly on the controversy being tried — it is nonpropensity evidence that speaks to a defendant's reasonable belief at the time of the alleged crime. Today's decision represents a fundamental break from this limitation on character evidence by allowing a defendant to present evidence that has *no direct connection to the case at hand* and is relevant to nothing but a victim's general tendency toward violence.[2] While the court largely avoids the use of the term "character evidence," the evidence to be admitted after today is precisely that: evidence of a person's prior acts used to show his or her propensity to commit such acts. Cf. *Commonwealth* v. *Helfant*, 398 Mass. 214, 224 (1986) (character evidence is "evidence that a defendant previously has misbehaved, indictably or not, [introduced] for the purposes of showing his bad character or propensity to commit the crime charged").

As an initial matter, I am troubled by the premise underlying the court's decision: that a victim's violent character (as evidenced through prior violent acts) is sufficiently probative of his or her action on a particular occasion to justify its admission. See *ante* at 658-660. Although authorities have acknowledged that character evidence may be probative of a person's behavior, see, e.g., Liacos, *supra* at § 4.4.1, at 131; 1A J. Wigmore, Evidence, § 57, at 1180-1181, 1211, 1366-1367 (Tillers rev. ed. 1983), I believe we should be hesitant to admit such evidence in the manner proposed by the court today. That "[t]he relevance threshold for the admission of evidence is low," see *ante* at 657 n.11, quoting *Commonwealth* v. *Arroyo*, 442 Mass. 135, 144 (2004), does not satisfy our doctrine regarding the admissibility of character evidence. Our traditional rule prohibiting the admission of prior act evidence to prove a person's character, while primarily motivated by our concern regarding prejudice, has

---

[2]The court downplays the vast differences between the "known" evidence currently admitted under *Commonwealth* v. *Fontes*, 396 Mass. 733 (1986), and *Commonwealth* v. *Edmonds*, 365 Mass. 496 (1974), and the character evidence of which the court now approves. See *ante* at 654, 662-663. The former type of evidence helps a jury to consider whether a defendant reasonably feared for his or her life during the incident in question. The latter invites a jury to consider, "Was the victim the sort of person who might have been a first aggressor?"

also been rooted in our belief that prior acts may not be adequately probative of a person's action on any particular occasion. See Liacos, *supra* at § 4.4.1, at 131; 1A J. Wigmore, *supra* at § 54.1, at 1150; *Commonwealth* v. *Stone*, 321 Mass. 471, 473 (1947). And the widely acknowledged concern over the risk of prejudice attendant to the admission of character evidence necessarily arises from, and is connected to, its questionable value. How many fights must a person initiate before being considered a "violent" person? One? Ten? Does the person who tends to pick fights as a young adult necessarily grow to be a fifty year old initial aggressor?

A guiding principle of our legal system is that we try cases and controversies, not people or their characters. Because we understand that good people sometimes do bad things, that bad people do not always do bad things, and that circumstances greatly influence behavior, it follows that, with certain well-defined exceptions, a person's prior actions, no matter how vile, should not be considered in judging their action at any other particular time. *Commonwealth* v. *Stone, supra* ("It does not follow that, because the defendant committed a similar offence on another occasion, he committed the crime for which he is being tried. . . . [I]t is not fair that a defendant in the course of a trial should be called upon to defend himself against accusations not set forth in the indictment"). See *Maillet* v. *ATF-Davidson Co.*, 407 Mass. 185, 188 (1990) (evidence that plaintiff had once consumed "a beer" while at work irrelevant to prove plaintiff consumed beer on day of accident). See also *Henderson* v. *State*, 234 Ga. 827, 829 (1975) ("A single act may have been exceptional, unusual, and not characteristic and thus a specific act does not necessarily establish one's general character . . ."). Precisely because a person's prior actions can be misleading and inaccurate predictors of future behavior, we have long held that it is unfair to judge a person based on past transgressions. See 1A J. Wigmore, *supra* at § 55.1, at 1160 ("it cannot be argued, 'Because *A* did an act X last year, therefore he probably did the act X as now charged.' Human action being infinitely varied, there is no adequate probative connection between the two. *A* may do the act once and may never do it again: and not only may he not do it again, but it is in no

degree probable that he will do it again. The conceivable contingencies that may intervene are too numerous"). For these reasons, I have considerable misgivings about adopting the view that character evidence is adequately relevant where such a view seems inconsistent with our long-held judicial philosophy against condemning people on the basis of past behavior. I believe we should adhere faithfully to this basic philosophy and remain committed to considering the crime charged and the facts of the case at hand, not the character or prior acts of the victim or the defendant.

Putting aside my doubts about the relevancy of the prior act evidence, I reject the idea that, in weighing the dubious probative value of such evidence against the risk of prejudice, we ought to adopt such evidence against one party and not the other. Although some scholars take the position that character evidence about victims, as opposed to defendants, poses few risks, see 1A J. Wigmore, *supra* at § 63.1, at 1382, I believe our well-settled rejection of character evidence should be applied with equal force to both defendants and victims. Prior acts of violence, possibly occurring years earlier and involving different parties, are no more probative or less damaging because they are committed by a victim rather than a defendant. If we accept, as we have historically, that a defendant's prior behavior is insufficiently predictive of her actions years later to outweigh the potential for prejudice, it follows that a victim's prior acts are also inappropriate for consideration. Conversely, if character evidence is, as the court proclaims today, highly relevant as to victims, it must be similarly so for defendants.

The court limits this newly admissible type of character evidence to prior violent acts *initiated* by a victim. See *ante* at 650. This does little to resolve the underlying deficiency of this type of character evidence. I do not believe that a single past act in which a victim was the aggressor is probative on the first aggressor issue. If the act must have been initiated by the victim to be relevant, why must it not involve similar circumstances to be meaningful? Why not the use of the same weapon, for example? Even accepting, arguendo, the court's premise that prior acts of violence are sufficiently relevant to outweigh any risk of prejudice, a victim would have had to engage in a pat-

tern or series of unprovoked attacks for the evidence to be adequately probative. I also disagree with the premise that prior bad act evidence in this context is somehow appropriate because it is being used to prove the "identity" of the first aggressor. See *id.* Evidence that is probative of identity is generally that evidence that distinguishes a person's behavior from others because of its uniqueness or distinctiveness. *Commonwealth* v. *Baker*, 440 Mass. 519, 530-531 (2003), quoting *Commonwealth* v. *Jackson*, 417 Mass. 830, 836 (1994). In contrast, the evidence to be admitted today need not indicate any modus operandi or reveal any signature style of behavior by the victim. It is not suggestive of identity, but rather allegedly indicates that one of the two parties — the victim — is the violent "type."

Even if we assume that such prior acts are sufficiently probative of future behavior, today's rule would be fair only if victims were equally able to explore defendants' violent histories. Instead of creating an even-handed approach, the court today constructs a one-sided rule that is prejudicial to victims. In cases involving two parties with violent pasts (not uncommon in murders and assaults), defendants may now introduce evidence of the victims' violent histories, while the Commonwealth will remain powerless to introduce similar evidence concerning defendants. See *Commonwealth* v. *Helfant*, 398 Mass. 214, 224 (1986). The court asserts that today's ruling will provide juries with "as complete a picture of the (often fatal) altercation as possible." *Ante* at 658-659. But by constructing a lopsided rule that permits consideration of only one side of the story, the decision does little to paint a "complete" picture for the jury and much to promote a biased view of the parties. And what of a victim's propensity toward peacefulness? Will prosecutors be able to rebut damaging character evidence with more favorable character evidence?

Hoping to neutralize this imbalance, the court notes (one would presume favorably) that Fed. R. Evid. 404(a)(1) now allows the Commonwealth to respond to victim character evidence with evidence of a defendant's violent character. See *ante* at 666 n.19. Admittedly, the Federal approach, if adopted by the Commonwealth, would resolve the imbalance cited above.

However, the court today does not adopt this more equitable Federal approach. Even if the court or the Legislature were eventually to adopt the Federal approach, this "solution" to the unfairness problem would be more troublesome than the court's decision today. The Federal approach, while equitable, would greatly diminish our traditional evidentiary protections that prevent defendants from being "reconvicted" of their prior acts. See, e.g., *Commonwealth* v. *Baker, supra*; *Commonwealth* v. *Brusgulis*, 406 Mass. 501, 505 (1990); *Commonwealth* v. *Triplett*, 398 Mass. 561, 562-564 (1986); *Commonwealth* v. *Stone, supra*. I believe today's decision, by creating a gross imbalance and necessitating some sort of "fix," sets us on precisely this dangerous course toward the erosion of long-held evidentiary safeguards for defendants. Given this court's valid concern for defendants' rights, see *ante* at 662, I would reject the court's new rule in favor of our well-balanced traditional approach of excluding most character evidence concerning both victims and defendants.

Today's decision will have other undesirable consequences. First, the admission of character evidence against victims will unduly prejudice juries against victims with violent pasts. See Liacos, *supra* at § 4.4.1, at 131 (rule against use of character evidence for propensity purposes premised on "high risk that such evidence will have a prejudicial impact on the jury and will result in a decision motivated by something other than the particular facts of the incident before the court"). Our new rule unreasonably invites the fact finder to evaluate the relative worth of a deceased victim without logical basis.[3] As the court acknowledges, "[t]he deep tendency of human nature to punish not because [the defendant] is guilty this time but because he is a bad man and may as well be condemned now that he is caught is a tendency that cannot fail to operate with any jury, in or out of court." 1A J. Wigmore, *supra* at § 57, at 1185. While such prejudice raises due process concerns when applied to a defendant, we should be no more willing to allow its applica-

---

[3]Presumably aware of these risks, the court encourages judges to "mitigate the dangers of prejudice and confusion inherent in introducing evidence of the victim's specific acts of violence by delineating the precise purpose for which the evidence is offered." *Ante* at 664. I do not believe limiting instructions will be adequate on this subject.

tion to a victim. If we find it unacceptable to imprison people for their prior bad acts, how is it any more acceptable to punish people for their prior bad acts by sanctioning their deaths?

Second, today's ruling will result in jury distraction and confusion, contribute to judicial delay, and increase litigation costs for the Commonwealth and the defense. Fact finders considering this newly permitted character evidence will be asked to wade through multiple incidents of violence (perhaps having to weigh conflicting evidence concerning several such incidents) before turning to the basis of the prosecution. See *Commonwealth* v. *Fontes*, 396 Mass. 733, 736 (1986) ("Negative information about the victim may divert the jury from focusing on their basic task by causing them . . . to consider the victim's character and worth . . ."); *Williams* v. *Lord*, 996 F.2d 1481, 1483-1484 (2d Cir. 1993), cert. denied, 510 U.S. 1120 (1994), quoting *People* v. *Miller*, 39 N.Y.2d 543, 551 (1976) (New York's rule against allowing evidence of victim's prior violent actions serves legitimate interest of "preventing 'undue diversion to collateral matters' " by jury); *People* v. *Miller, supra* at 552 ("progress of a criminal trial may become stalled by evidentiary conflicts over matters of tangential relevance, thereby impeding the expeditious administration of justice").[4] It is sometimes difficult for juries to develop a complete and accurate picture of the circumstances before them. It will no doubt be even more difficult for juries to assess comprehensively the circumstances attending myriad prior incidents of violence involving victims, about which they will have far less information.

The court acknowledges some of these concerns in passing but concludes they do not "require an unbending rule excluding all of the victim's specific acts of violence when relevant to the

---

[4]In a recent decision, we determined that a third-party suspect's history of sexual aggression was relevant to a theory that he, rather than the defendant, may have assaulted and killed the victim. See *Commonwealth* v. *Conkey, ante* 60, 66-70 (2004). The evidence deemed relevant in the *Conkey* case is wholly distinct from the evidence at issue here. There the evidence was probative of whether the defendant, as opposed to someone else, committed the crime. The trial judge had excluded the evidence on relevance grounds. In reversing, we found the evidence was relevant and did not change any evidentiary rules to do so. Here, the court must change our common-law rules of evidence in order to admit the evidence in question.

identity of the first aggressor." *Ante* at 662. The court's conten-
tion that we currently employ an "unbending rule" is erroneous.
Prior to today's ruling, defendants could introduce a range of
evidence of a victim's past conduct in support of a self-defense
claim. See *Commonwealth* v. *Rodriquez*, 418 Mass. 1, 5-7
(1994) (evidence of specific recent violent acts by victim
directed at defendant); *Commonwealth* v. *Fontes*, *supra* at 735-
737 (victim's violent acts directed at third parties but known to
defendant); *Commonwealth* v. *Edmonds*, 365 Mass. 496, 502
(1974) (victim's reputation for violence known to defendant).
Defendants have even been permitted, in limited circumstances,
to introduce some evidence of victims' prior acts even though
they were unknown to these defendants. See *Commonwealth* v.
*Rubin*, 318 Mass. 587, 589 (1945) (evidence of threats against
defendant, "even though the threat was unknown to the
defendant"). Moreover, it is generally recognized that prior
acts, regardless whether defendant knew them, may be
introduced not as evidence of bad character, but to show com-
mon scheme, pattern of operation, absence of accident or
mistake, identity, intent, or motive. See *Commonwealth* v. *Trip-
lett*, *supra* at 562-563. I believe these existing evidentiary rules
provide a defendant with ample opportunity to examine a
victim's past, particularly given the questionable value of
character evidence and the unfairness of today's new rule.

   The primary reason of the court for adopting this new rule of
evidence is that it wishes to follow the "overwhelming trend"
of other jurisdictions toward admitting character evidence of the
victim. See *ante* at 654-657. Yet while purporting to adopt the
modern "trend" and its rationale, the court adopts an approach
that differs significantly from that trend, rendering its primary
rationale unpersuasive. The trend in other jurisdictions, with
which obviously I disagree, is to admit testimony of the victim's
*reputation* as proof relevant to who may have been the first ag-
gressor, regardless of whether that reputation was known to the
defendant at the time of the incident in question. See *ante* at
654-655 & n.8, and cases cited. However, the court does not
follow this trend. Rather, it adopts a novel approach of exclud-
ing reputation evidence offered for the purpose of proving the
first aggressor, but allowing the admission of evidence of

specific acts of violence initiated by the victim, unknown to the defendant, to demonstrate the victim's propensity for violence. See *ante* at 664.

The court cites forty-five jurisdictions that have held *"some form* of [victim character] evidence is properly admissible on the first aggressor issue (emphasis added)." *Ante* at 655. However, of these forty-five jurisdictions, none has taken the approach crafted by the court today (admission of specific act evidence, unknown to the defendant, to prove first aggression by the victim). To the contrary, the majority of jurisdictions cited by the court that have considered the issue of victim character evidence do *not* permit the use of specific act evidence unknown to the defendant to prove who was the first aggressor, but instead permit only reputation or opinion evidence to show a victim's violent character.[5] Moreover, many of those States that do allow some form of specific act evidence to demonstrate a victim's propensity for violence expressly exclude direct evidence of specific acts and only permit inquiry into specific acts on cross-examination.[6] Several other jurisdictions cited by the court as embracing victim character evidence limit specific

[5]See, e.g., *Higginbotham* v. *State*, 262 Ala. 236, 240 (1955); *Allen* v. *State*, 945 P.2d 1233, 1240 (Alaska Ct. App. 1997); *State* v. *Santanna*, 153 Ariz. 147, 149 (1987); *State* v. *Zamora*, 140 Ariz. 338, 340-341 (Ct. App. 1984); *McClellan* v. *State*, 264 Ark. 223, 227 (1978); *People* v. *Ferguson*, 43 P.3d 705, 710 (Colo. Ct. App. 2001); *Smith* v. *State*, 606 So. 2d 641, 642-643 (Fla. Dist. Ct. App. 1992); *State* v. *Custodio*, 136 Idaho 197, 204 (Ct. App. 2001); *State* v. *Jacoby*, 260 N.W.2d 828, 838 (Iowa 1977); *Commonwealth* v. *Davis*, 14 S.W.3d 9, 14 (Ky. 1999); *State* v. *Edwards*, 420 So. 2d 663, 671 (La. 1982); *People* v. *Cellura*, 288 Mich. 54, 68 (1939); *State* v. *Irby*, 368 N.W.2d 19, 23 (Minn. Ct. App. 1985); *State* v. *Sattler*, 288 Mont. 79, 95-96 (1998); *State* v. *Newell*, 141 N.H. 199, 201-202 (1996); *State* v. *Barbour*, 295 N.C. 66, 74 (1978); *State* v. *Barnes*, 94 Ohio St. 3d 21, 24 (2002); *Harris* v. *State*, 400 P.2d 64, 70 (Okla. Crim. App. 1965); *State* v. *Dellay*, 687 A.2d 435, 438 (R.I. 1996); *Tate* v. *State*, 981 S.W.2d 189, 192-193 & n.5 (Tex. Crim. App. 1998); *State* v. *Roy*, 151 Vt. 17, 31 (1989); *State* v. *Hutchinson*, 135 Wash. 2d 863, 886-887 (1998), cert. denied, 525 U.S. 1157 (1999); *State* v. *Boggess*, 204 W. Va. 267, 275 n.11 (1998); *Werner* v. *State*, 66 Wis. 2d 736, 744 n.6 (1975).

[6]See, e.g., *Brooks* v. *State*, 683 N.E.2d 574, 576-577 (Ind. 1997); *Daniel* v. *State*, 78 P.3d 890, 901 (Nev. 2003), cert. denied, 541 U.S. 1045 (2004); *State* v. *McIntyre*, 488 N.W.2d 612, 617-618 (N.D. 1992); *State* v. *Lotches*, 331 Or. 455, 489 (2000), cert. denied, 534 U.S. 833 (2001); *State* v. *Blem*, 610 N.W.2d 803, 812 (S.D. 2000); State *vs.* Hammock, No. M2000-00334-CCA-R3-CD 824 (Tenn. Crim. App. Oct. 12, 2001).

act evidence to prior convictions.[7] Even the few jurisdictions that allow a broader range of specific act evidence to be admitted for propensity purposes tend also to permit reputation or opinion evidence concerning the victim that was unknown to the defendant.[8] None takes the novel approach adopted by the court today of limiting such victim character evidence to those specific acts of violence initiated by the victim and unknown to the defendant. See *ante* at 664-665.

The court thus cites no authority for adopting its approach of admitting "concrete and relevant evidence of specific acts [of violence initiated by a victim but not] more general evidence of the victim's reputation for violence."[9] *Ante* at 665. The court in fact acknowledges that the "dominant interpretation" in other jurisdictions is not the one it adopts today, but rather one that *excludes* specific acts of violence by victims when those acts are unknown to the defendant. See *ante* at 661 n.15. See, e.g., *Allen* v. *State*, 945 P.2d 1233, 1240-1241 (Alaska Ct. App. 1997), and cases cited (prohibiting specific act evidence of victim's violent character and limiting proof to reputation and opinion evidence, and noting courts construing Federal Rules of Evidence and State courts construing their counterparts to Federal rules have consistently reached same conclusion); *State* v. *Jacoby*, 260 N.W.2d 828, 838 (Iowa 1977) (adopting "majority" rule that homicide victim's violent character may not be

---

[7]See, e.g., *State* v. *Smith*, 222 Conn. 1, 17-18, cert. denied, 506 U.S. 942 (1992); *State* v. *Deavers*, 252 Kan. 149, 156-157 (1992), cert. denied, 508 U.S. 978 (1993); *State* v. *Aguiar*, 322 N.J. Super. 175, 183 (App. Div. 1999); *Commonwealth* v. *Beck*, 485 Pa. 475, 478 (1979); *State* v. *Howell*, 649 P.2d 91, 96 (Utah 1982).

[8]See, e.g., *People* v. *Wright*, 39 Cal. 3d 576, 587 (1985); *Rawls* v. *United States*, 539 A.2d 1087, 1089 (D.C. 1988); *Chandler* v. *State*, 261 Ga. 402, 407 (1991); *Bennett* v. *State*, 254 Ga. 162, 164 (1985); *State* v. *Basque*, 66 Haw. 510, 513-514 (1983); *State* v. *Lui*, 61 Haw. 328, 329-330 (1979); *People* v. *Florey*, 153 Ill. App. 3d 530, 538-539 (1987); *Newsom* v. *State*, 629 So. 2d 611, 613-614 (Miss. 1993); *State* v. *Lewchuk*, 4 Neb. App. 165, 175 (1995); *Edwards* v. *State*, 973 P.2d 41, 45-46 (Wyo. 1999).

[9]I do not read the court's decision as altering our traditional law permitting admission of evidence of a victim's reputation where it is known to a defendant claiming self-defense. See *Commonwealth* v. *Edmonds*, 365 Mass. 496, 502 (1974). Nor do I read it as altering the long-standing rule that an accused may introduce reputation evidence of his or her own good character. See *Commonwealth* v. *Belton*, 352 Mass. 263, 268, cert. denied, 389 U.S. 872 (1967).

established by proof of specific acts).[10] I could have been persuaded of the need for today's new rule of evidence if provided with a convincing reason for adopting it. The distinguishable law of other jurisdictions is not sufficiently convincing.

The court attempts to rein in its new rule through judicial discretion. See *ante* at 663 ("sound discretion of trial judges to exclude marginally relevant or grossly prejudicial evidence can prevent the undue exploration of collateral issues"). However, the court's hope that judges will exercise their discretion to exclude specific act evidence after today's sea change in our rules of evidence is unrealistic. Judges are no longer able to rule the evidence per se inadmissible, theoretically leaving open for "discretion" the issues of relevancy and probative value versus prejudice. But the court has already made these determinations as well for judges, in effect leaving little discretion to be exercised by judges who do not wish to contradict this court's holdings. For the court has concluded that this specific act evidence is relevant, *ante* at 657, has "substantial probative value," *ante* at 656, and that the risk of prejudice to the defendant is the "greater danger," *ante* at 658. While the court's reliance on judicial discretion sounds reasonable, it offers little more than a false hope. On the rare occasions when trial judges risk reversal in order to exclude specific act evidence, the inadequate guidance provided to judges by the court today, see *ante* at 662-664, is certain to lead to inconsistent application of the new rule, protracted proceedings, and lengthy appeals. Because our deferential standards of review require us to uphold judges' evidentiary decisions absent abuses of discretion, see, e.g., *Commonwealth* v. *Arroyo*, 442 Mass. 135 (2004), our case law will soon reflect the uncertainty and inconsistency of the case-by-case assessments encouraged by the court today.

Contrary to the court's intentions, today's endorsement of

[10]In critiquing the court's decision to allow the admission of specific act evidence while prohibiting reputation evidence, I do not wish to suggest my approval of reputation evidence to prove the identity of the first aggressor where such reputation was unknown to the defendant. I find both forms of character evidence equally lacking in probative value where unknown to the defendant. Instead, my point is that the approach taken by the court today comports with neither logic nor any modern trend.

character evidence will not foster more accurate jury findings; nor will it enhance justice for victims or defendants. Because I believe we should affirm our existing law that evidence of a victim's violent character is only admissible if the defendant knew of that violent character at the time of the alleged crime, see *Commonwealth* v. *Graham*, 431 Mass. 282, 291 (2000), I would affirm the defendant's conviction.