NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12324

COMMONWEALTH  vs.  THOMAS A. WOODS.


Plymouth.     April 5, 2018. - August 7, 2018.

Present:  Gants, C.J., Lenk, Lowy, Budd, Cypher, & Kafker, JJ.


Homicide.  Grand Jury.  Evidence, Testimony before grand jury.
    Practice, Criminal, Grand jury proceedings.  Witness, Self-
    incrimination.



    Indictment found and returned in the Superior Court
Department on October 5, 2006.

    Following review by this court, 466 Mass. 707 (2014), a
motion for a new trial was heard by Thomas F. McGuire, Jr., J.

    A request for leave was allowed by Lowy, J., in the Supreme
Judicial Court for the county of Suffolk.


    Myles D. Jacobson for the defendant.
    Carolyn A. Burbine, Assistant District Attorney, for the
Commonwealth.


    CYPHER, J.  The defendant, Thomas A. Woods, appeals from

the denial of his motion for a new trial.  In 2009, the

defendant was convicted of murder in the first degree and

sentenced to life in prison.  On direct appeal, he challenged

the admission of his grand jury testimony -- later used as substantive evidence at trial -- arguing that it was illegally obtained, because he was not informed before testifying either that he was a target of a grand jury investigation, or that he had a right against self-incrimination.  The court concluded that the trial judge did not err in finding that the defendant was not a target of the grand jury when he was called before the grand jury to testify, and affirmed his conviction.  See Commonwealth v. Woods, 466 Mass. 707, 709, 716-720, cert. denied, 134 S. Ct. 2855 (2014) (Woods I).  In doing so, the court also announced a prospective rule, pursuant to its superintendence authority, requiring that grand jury witnesses who are targets or likely targets of a criminal investigation be given self-incrimination warnings before testifying.  Id. at 719-720.

Following Woods I, the defendant moved for a new trial, contending that facts not before the trial judge or this court during his direct appeal establish that the defendant was a target of a grand jury investigation; accordingly, the defendant argued, his grand jury testimony was improperly admitted, and he deserved a new trial.  The motion judge, who was not the trial judge, disagreed, concluding that although the new facts raised in the defendant's motion establish that he was a target of the investigation, this court's holding in Woods I "was not

dependent on the finding that the defendant was not a target."
The defendant then filed a petition before a single justice of
the county court pursuant to G. L. c. 278, § 33E, asking that
his appeal from the denial of his motion be considered by the
full court.  The single justice granted the petition in March,
2017, concluding that it "present[ed] a new and substantial
question which ought to be determined by the full court."  G. L.
c. 278, § 33E.

For the reasons that follow, we discern no error in the
motion judge's conclusion, and affirm the denial of the
defendant's motion for a new trial.

Background.  The facts underlying the defendant's
conviction of murder in the first degree are fully set forth in
Woods I, 466 Mass. at 709-712.  We review only those facts
pertinent to the defendant's postconviction proceedings.

1.  Grand jury investigation.  In February, 2006, the
defendant appeared as the fifth witness to testify before a
grand jury investigating the December, 2005, shooting death of
Paul Mullen in Brockton.  Prior to testifying, the defendant had
been interviewed by police twice.  Four witnesses testified
before the grand jury prior to the defendant, and two of those
witnesses -- David Sheff and Nicole Derochea -- stated that they
had had heard, secondhand, that the defendant had threatened to
shoot the victim before the killing occurred.  When the

defendant appeared to testify, he was not informed that he was a target of the investigation or that he had a right against self-incrimination.  In his grand jury testimony, he provided an exculpatory version of events on the night of the shooting, and explained certain inconsistencies between this version of events and what he had said during his prior interviews with police.  At the end of a nine-month investigation that involved approximately forty witnesses and generated 1,700 pages of transcripts, the grand jury returned an indictment against the defendant in October, 2006.

2.  Defendant's pretrial motion in limine.  In March, 2009, the defendant filed a motion in limine to exclude his grand jury testimony from use at his trial,[1] arguing that he was "not informed that [he] was a target of the grand jury investigation" or that he could exercise his right not to testify.  The motion stated the date of the defendant's grand jury appearance (February 10, 2006).  The Commonwealth sought to introduce that testimony in order to illustrate "wide-ranging inconsistencies and implausibilities in [the defendant's] account[]" of the night of the shooting.  See Woods I, 466 Mass. at 712 ("His

---

[1] The motion was also directed at the defendant's prior statements to police, but the defendant raises no claim of error with respect to those statements.

grand jury testimony was admitted in evidence . . . to illustrate his conflicting stories and outright lies").

3. Commonwealth's pretrial motion in limine. On April 24, 2009, the Commonwealth filed its own motion in limine seeking to admit evidence of prior bad acts by the defendant. The motion described the testimony of five grand jury witnesses, including Derochea, who were expected to testify at trial regarding threats made by the defendant against the victim. The Commonwealth attached to the motion the transcripts of the five witnesses' testimony. It is not clear from the record, however, the form in which those transcripts were presented -- specifically, whether the attachments clarified the date of each witness's testimony -- because those attachments were not included with the Commonwealth's motion as part of the instant record.[2]

4. Pretrial hearing on the motions. On April 27, 2009, the trial judge held a hearing on both motions. Defense counsel reiterated the position that the defendant's testimony was involuntary because he was a target of the investigation but did not receive "any warnings that he didn't have to submit to that

---

[2] We can nevertheless conclude that the Commonwealth provided these transcripts to the trial judge because the Commonwealth's motion stated that the grand jury transcripts for the witnesses were attached and, at the hearing on the motion, the Commonwealth asked the judge to impound those attachments.

questioning or that he could assert his Fifth Amendment privilege."[3]  He argued that the issue was "whether or not the government was under any obligation to inform [the defendant] he was the target of the investigation and . . . that he had a Fifth Amendment privilege."  Counsel acknowledged that he "ha[d]n't found a state case directly on point," and stated that his argument was based on his own practical experience, having never witnessed a situation where a grand jury target was not informed of that status or given warnings before testifying.  Before asking the Commonwealth for its position, the trial judge likewise stated, "I didn't realize this was an issue, so I haven't researched the law on it.  I know in the federal system

---

[3] Defense counsel's pretrial argument that the defendant was a target was based solely on the defendant's own grand jury testimony:  "[I]f you read [the defendant's grand jury testimony], it's abundantly clear that he was a target . . . . [H]e is being confronted by the prosecutor in a way that is designed to further build the case against him that they already have, in their mind, made. . . .  It's not a well, what happened, what did you see, and what did you do; it's a confrontational interview or interrogation in front of the grand jury where he's not represented by counsel.  And he's clearly the target of the investigation at that point."  The prosecutor responded that he had taken the same approach to examining the defendant as he had with other grand jury witnesses who had provided inconsistent statements to police, and that such "a vigorous examination of a witness [in] a grand jury investigation . . . doesn't make the person a target at the time of the examination."  At the hearing, the trial judge indicated that he agreed with the Commonwealth:  "[W]hen I read the grand jury, it didn't jump out to me that he was a target. . . .  I got the impression, clearly, that they felt he knew more than he was saying, and that was the gist of the question[ing]."

if somebody's going to be a target, they're told.  But I haven't researched this whole issue, but I will."

The trial judge asked the prosecutor, who had also been responsible for the grand jury investigation:  "At the time -- if you can say this, because it would change the whole way that I'd have to view this, in your opinion, was [the defendant] a target of the investigation when you brought him to the grand jury?"  The prosecutor replied that although the defendant's inconsistencies in his earlier statements to police made him "a person of interest" -- "[t]here were things that weren't adding up . . . that he seemed to know a lot more than he was letting on.  And so that was the nature of our inquiry with [the defendant]" -- the Commonwealth did not consider him a "target" until additional "witnesses came in and testified about threatening statements . . . that [the defendant] had made to [the victim], and additional information was gathered about [the defendant] as the investigation went on in subsequent months leading up to [the] October" indictment.  The prosecutor added that had the defendant been a target, he would have received a letter informing him of that status.

On May 6, 2009, the trial judge issued an oral ruling denying the defendant's motion.  He found that "[b]ased upon the evidence before [him], the defendant . . . was not a target, but [the Commonwealth] believed that he knew more than he told and

he was not being fully truthful."[4]  The judge also found that the defendant was not under the influence of drugs or alcohol, threatened, coerced, or offered false promises when appearing before the grand jury, and "was treated appropriately," such that his testimony was free and voluntary under the totality of the circumstances.

5.  Defendant's direct appeal.  At trial, the jury found the defendant guilty of murder in the first degree.  On direct appeal, he continued to press his objection to the introduction of his grand jury testimony, arguing that it infringed on his "federal and state law rights against compelled self-incrimination."  We rejected the argument that self-incrimination warnings were legally required at the time, thus upholding the trial judge's denial of the defendant's motion in limine.  Woods I, 466 Mass. at 716-720.  We discerned no error in the trial judge's finding that the defendant was not a

_____

    [4] As for what the trial judge had before him when making this determination, it appears from the available record that the judge had received the date and transcript of the defendant's own grand jury testimony, established through the defendant's motion in limine and the submission of the transcript of the defendant's testimony.  In addition (albeit in connection with the Commonwealth's separate motion to admit evidence of the defendant's prior bad acts), the trial judge had received the transcripts of five additional grand jury witnesses (including Nicole Derochea); however, because the Commonwealth's attachments are not a part of the instant record, we cannot discern how informed the judge might have been as to the content and date of each of those five witness's testimony.

target, and added that "[e]ven if the defendant were a 'target,' the Commonwealth was under no obligation to warn him of that status" under Federal or State law.  Id. at 717, citing United States v. Washington, 431 U.S. 181, 188-190 (1977), and Commonwealth v. D'Amour, 428 Mass. 725, 743 (1999).

We then "consider[ed] for the first time" what we perceived as "the defendant's separate argument that the Commonwealth must advise targets or potential targets of the grand jury's investigation of their right not to incriminate themselves." Woods I, 466 Mass. at 717-718.  Concluding that a grand jury summons "is a form of compulsion," we "adopt[ed] a rule that where, at the time a person appears to testify before a grand jury, the prosecutor has reason to believe that the witness is either a 'target' or is likely to become one, the witness must be advised, before testifying, that (1) he or she may refuse to answer any question if a truthful answer would tend to incriminate the witness, and (2) anything that he or she does say may be used against the witness in a subsequent legal proceeding" (footnote omitted).  Id. at 719-720.[5]  We clarified

---

[5] The court adopted the United States Attorney's Manual definition of "target," as "a person as to whom the prosecutor or the grand jury has substantial evidence linking him or her to the commission of a crime and who, in the judgment of the prosecutor, is a putative defendant."  Commonwealth v. Woods, 466 Mass. 707, 716, 719 n.12 (2014) (Woods I), quoting United States Attorneys' Manual § 9-11.151 (2009).

that the rule is nonconstitutional and therefore "is only required to be applied prospectively." Id. at 720.

6. Motion for a new trial. The defendant subsequently moved for a new trial, where he focused primarily on refuting the trial judge's factual determination that he was not a target of the investigation.[6] The defendant attached the grand jury testimony of the four witnesses who had testified before the defendant during the grand jury investigation, but whose testimony was largely unknown to the trial judge, and therefore was not a part of the record in Woods I.[7] Two of those witnesses -- Sheff and Derochea -- testified to hearsay statements they had heard about threats the defendant had made against the victim before the shooting. The motion judge agreed that the grand jury testimony of these two witnesses constituted "substantial evidence" linking the defendant to the crime, thus

_____

[6] The defendant contended that the trial judge's finding that the defendant was not a target resulted from ineffective assistance of counsel or prosecutorial misconduct. The defendant separately argued that he was "deprived of a fair opportunity for proper application of the Humane Practice Rule," but he does not continue to pursue that claim before us.

[7] The defendant submitted the grand jury testimony of the four witnesses who had testified at the grand jury prior to his own testimony, including David Sheff and Derochea, with his motion for a new trial. Although the trial judge had received Derochea's testimony in some manner (as part of the Commonwealth's motion in limine to admit prior bad act evidence, see note 4, supra), it does not appear that the transcripts of the testimony of Sheff and the other two witnesses were provided to the trial judge.

rendering him "a target or potential target of the investigation." The judge declined to grant the defendant a new trial on that basis, however, concluding that this court's decision in Woods I was not dependent on the factual finding that the defendant was not a target of the investigation.

Discussion. A single justice's determination that a petition raises a "new and substantial question" under G. L. c. 277, § 33E, is "final and unreviewable." Commonwealth v. Scott, 437 Mass. 1008, 1008 (2002). We review the denial of the defendant's motion for a new trial for "a significant error of law or other abuse of discretion" (citation omitted). Commonwealth v. Acevedo, 446 Mass. 435, 441 (2006). The defendant argues that the motion judge made such an error in concluding that this court's decision in Woods I upholding the admission of the defendant's grand jury testimony did not depend on the factual finding that the defendant was not a target of the investigation. The motion judge did not err.

First, the language of Woods I makes clear that the motion judge was correct. On direct appeal, the defendant raised the very same legal argument that he puts before us now: because he was a target of the grand jury, he was entitled to self-incrimination warnings. The court specified in Woods I, 466 Mass. at 717, that "[e]ven if the defendant were a 'target,' the Commonwealth was under no obligation to warn him of that status"

(emphasis added).  Likewise, addressing "the defendant's separate argument" regarding self-incrimination warnings, the court acknowledged that it was considering the issue "for the first time" -- meaning that nothing prior to Woods I required self-incrimination warnings as a matter of law.  Id. at 717-718. In other words, just as the Commonwealth was under no obligation to warn the defendant of his target status, even if he were a target, so too was the Commonwealth under no obligation at that time to advise the defendant of his right against self-incrimination.  The court adopted that very requirement in the defendant's case, and stated that it was to apply only prospectively, "to grand jury testimony elicited after the issuance of the rescript in [that] case."  Id. at 720.  Thus, irrespective of the defendant's target status, he was not entitled to the new rule.[8]

---

[8] Notwithstanding the language of Woods I, the defendant suggests in a single sentence of his brief that he is entitled to the retroactive benefit of the Woods I rule, based on the court's opinion in Commonwealth v. Adjutant, 443 Mass. 649, 667 (2005).  See Commonwealth v. Candelario, 446 Mass. 847, 859 (2006), quoting Commonwealth v. Donahue, 430 Mass. 710, 714 n.1 (2000) (single sentence stating claim with citation "[in]adequate for appellate consideration" under Mass. R. A. P. 16 [a] [4], as amended, 367 Mass. 921 [1975]).  He expands on this argument somewhat in a postargument letter prompted by a question during oral argument concerning Adjutant's potential application.  In Adjutant, the court announced a new common-law rule of evidence, and concluded that the defendant should be given the benefit of the new rule -- thus entitling her to a new trial -- because the defendant had alleged the error and argued for the new rule on direct appeal.  Adjutant, supra, citing

As the motion judge recognized, the sole difference between the defendant's argument on direct and his argument on collateral review is the factual basis for his claim that he was a target:  now, in addition to his own testimony, he offers the testimony of the four witnesses who appeared before him during the grand jury investigation (and whose testimony the motion judge deemed "substantial evidence" establishing that the defendant was a target).  At the core of the defendant's instant argument are the dual suggestions that, had the trial judge been made aware that two witnesses (Sheff and Derochea) testified at the grand jury before the defendant did, regarding prior threats the defendant had made against the victim, the trial judge (1) would have found that the defendant was a "target" by the time he testified, and (2) would have granted on that basis the

---

Commonwealth v. Dagley, 442 Mass. 713, 721 n.10 (2004), cert. denied, 544 U.S. 930 (2005).  Adjutant is inapposite because that case involved a defendant's direct appeal, whereas this case involves the defendant's postconviction proceedings.  The defendant offers no authority to support the claim that he is entitled to the retroactive benefit, on collateral review, of a nonconstitutional rule first announced in his direct appeal, where the court specified that the rule would apply "only . . . to grand jury testimony elicited after the issuance of the rescript in [Woods I.]"  Woods I, 466 Mass. at 720.  We likewise reject the defendant's related assertion that the Woods I rule is in fact constitutional, not procedural, on the ground that it is "based in" the constitutional protection against self-incrimination.  See id. at 720 ("This rule is not a new constitutional rule, but rather an exercise of our power of superintendence").

defendant's motion to exclude the defendant's grand jury testimony.

We are in no position to engage in such speculation. First, the fact that the motion judge concluded, based on this new testimony, that the defendant was a target does not automatically establish that the trial judge would have reached the same conclusion. Both Sheff and Derochea's testimony involved hearsay, and this may well have affected the weight that the trial judge would have assigned their testimony when determining whether it constituted "substantial evidence" that the defendant was a target when he testified.[9] It was not until after the defendant testified that the grand jury heard from additional witnesses who described hearing the defendant's threats firsthand.

Second, even assuming that the trial judge would have concluded based on this additional testimony that the defendant was a target, we cannot say that he would have excluded the defendant's grand jury testimony on that basis. The defendant focuses extensively, and exclusively, on the trial judge's comment at the motion in limine hearing that the defendant's

---

[9] In ruling on the defendant's pretrial motion in limine, the trial judge rejected the defendant's argument (which he continues to argue before us) that the defendant's own grand jury testimony, and the nature of the prosecutor's questioning, also demonstrate that he was a target. See note 3, supra.

status as a target "would change the whole way that [he would] have to view this" issue.  What the defendant omits is the trial judge's additional comment, made at the very outset of the hearing, that he had not yet researched the law regarding the defendant's position that target warnings were required.  As our above discussion makes clear, had the trial judge done so, he would have discovered that such warnings were not legally required at that time, and thus the Commonwealth's failure to provide the defendant with such a warning did not preclude them from using that testimony at trial.

Conclusion.  We decline to grant the defendant a new trial on collateral review based on an alleged violation of a right that simply did not exist at the time of his trial.[10]  We affirm the denial of the defendant's motion for a new trial.

So ordered.

---

[10] In light of our conclusion that the Woods I rule did not hinge on the defendant's target status, we need not address the defendant's related arguments that the trial judge's finding that the defendant was not a target was the product of ineffective assistance of counsel, prosecutorial misconduct, or both.