# United States Court of Appeals
## For the First Circuit

No. 20-1664

THOMAS WOODS,

Petitioner, Appellant,

v.

SEAN MEDEIROS, Superintendent,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Lynch, Selya, and Kayatta,
Circuit Judges.

Myles Jacobson for appellant.
Abrisham Eshghi, Assistant Attorney General, with whom Maura Healey, Attorney General of Massachusetts, was on brief, for appellee.

April 8, 2021

**KAYATTA, Circuit Judge.** Thomas Woods has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, seeking to vacate his Massachusetts conviction for murder in the first degree. Woods argues that his rights under the Fifth Amendment to the United States Constitution were violated when the prosecution introduced at trial the testimony that Woods had given to a grand jury without being advised of his privilege against self-incrimination. His unwarned testimony was inadmissible, he argues, because he was a target of the grand jury's investigation when he appeared as a witness. The Massachusetts Supreme Judicial Court denied relief when Woods presented this argument in his challenge to his conviction on direct appeal, Commonwealth v. Woods (Woods I), 1 N.E.3d 762, 770-72 (Mass. 2014), and in his challenge to the denial of his motion for a new trial, Commonwealth v. Woods (Woods II), 102 N.E.3d 961, 966-68 (Mass. 2018). Woods subsequently presented the same argument in a federal habeas petition, which the district court denied. Woods v. Medeiros, 465 F. Supp. 3d 1, 12-16 (D. Mass. 2020). For the reasons that follow, we affirm.

## I.

We rely on the SJC's opinions in Woods I and Woods II to summarize the record compiled in the state court. See Gomes v. Silva, 958 F.3d 12, 16 (1st Cir. 2020) ("[W]hen we consider a state conviction on habeas review, we presume the state court's factual

findings to be correct." (alteration in original) (quoting Dorisca v. Marchilli, 941 F.3d 12, 14 (1st Cir. 2019))); 28 U.S.C. § 2254(e)(1).

Woods and Paul Mullen were friends and street-level marijuana dealers. Woods I, 1 N.E.3d at 765. Their relationship became strained when Mullen became indebted to Woods. Id. On several occasions, Woods said to Mullen and others that he would shoot Mullen if Mullen failed to repay. Id.

Early in the morning on December 2, 2005, Woods and Mullen agreed to meet at a gas station in Brockton, Massachusetts, to smoke marijuana. Id. at 764, 766. When Mullen arrived, Woods asked Mullen to sit in Woods's car. Id. at 766. After Woods went inside the gas station, two men approached the car, and one of them shot Mullen eight times, killing him. Id. at 766, 768. Following the shooting, Woods returned to his car, put Mullen's body on the ground, and drove to Woods's girlfriend's house. Id. at 766. Later, outside of his girlfriend's house, Woods was seen talking to a man similar in description to the shooter. See id. at 766-67.

Woods spoke to the police about Mullen's death during noncustodial interviews on December 2, 2005, and on February 6, 2006. See id. at 767. On February 10, 2006, after receiving a summons to appear, Woods testified before the grand jury as a witness. Id. In relevant part, he admitted that he knew

- 3 -

beforehand that Mullen was coming to the gas station to smoke marijuana and that, minutes before the shooting, he suggested that Mullen sit in Woods's car. In October 2006, the grand jury returned an indictment charging Woods with murder in the first degree. Woods II, 102 N.E.3d at 962-63.

Woods filed a motion in limine to exclude his grand jury testimony. He argued that the testimony's admission would violate his Fifth Amendment right against compelled self-incrimination because he was a target of the grand jury's investigation when he was commanded to testify and he was not advised that he could refuse to answer questions if his answers might tend to incriminate him. Id. at 963-64; see also U.S. Const. amend. V. The prosecution contended that there was no constitutional barrier to introducing the testimony because, at the time he testified, Woods was not a target but a mere "person of interest" due to inconsistencies in the statements he made during his two police interviews. Woods II, 102 N.E.3d at 964. The trial judge denied Woods's motion, finding that Woods was not a target when he appeared before the grand jury and that he testified freely and voluntarily. Id. at 964-65.

The court later admitted Woods's grand jury testimony into evidence at trial, Woods I, 1 N.E.3d at 767; the jury found Woods guilty of murder in the first degree, id. at 764; and Woods was sentenced to life in prison, id.

- 4 -

On direct appeal, Woods raised "the question of whether the grand jury testimony (obtained by subpoena) of a subject of the grand jury investigation could have been used at trial against the witness if there had been no notice of the witness' right not to answer where the answer would be self-incriminating." He asked the SJC to resolve that question in his favor, either by holding that the testimony's admission violated his federal and Massachusetts constitutional rights against self-incrimination or by exercising its supervisory powers to suppress the testimony.

The SJC affirmed Woods's conviction. It found "no error in the judge's ruling that the defendant was not a target, and that the prosecutor was not required to advise him of his Fifth Amendment rights before eliciting his testimony." Id. at 770. The SJC "first review[ed] the judge's finding that the defendant was not a target" when he appeared before the grand jury. Id. The SJC accepted the trial judge's conclusion based on record evidence indicating that, when Woods testified, he was "somebody that was very interesting" to the police but was not a "suspect." Id. at 770-71.

Notwithstanding its affirmance of the finding that Woods was not a target when he appeared before the grand jury, the SJC proceeded to consider as well Woods's "separate argument that the Commonwealth must advise targets or potential targets of the grand jury's investigation of their right not to incriminate

themselves." Id. at 771. In so doing, the SJC stated that the Supreme Court "has never determined 'whether any Fifth Amendment warnings whatever are constitutionally required for grand jury witnesses.'" Id. (quoting United States v. Pacheco-Ortiz, 889 F.2d 301, 307 (1st Cir. 1989)); see also United States v. Washington, 431 U.S. 181, 186 (1977). The SJC did, nevertheless, promulgate a new supervisory rule that

> where, at the time a person appears to testify before a grand jury, the prosecutor has reason to believe that the witness is either a "target" or is likely to become one, the witness must be advised, before testifying, that (1) he or she may refuse to answer any question if a truthful answer would tend to incriminate the witness, and (2) anything that he or she does say may be used against the witness in a subsequent legal proceeding.

Id. at 772 (footnote omitted). The rule's purpose, the SJC explained, was "to discourage the Commonwealth from identifying a person as a likely participant in the crime under investigation, compelling his or her appearance and testimony at the grand jury without adequate warnings, and then using that testimony in a criminal trial." Id. The SJC made clear that the rule was "not a new constitutional rule, but rather an exercise of our power of superintendence 'to regulate the presentation of evidence in court proceedings.'" Id. (quoting Commonwealth v. Dagley, 816 N.E.2d 527, 533 (Mass. 2004)). And the court explained that the rule

- 6 -

would only apply "prospectively to grand jury testimony elicited after the issuance of the rescript in this case." Id.

Woods next moved for a new trial, arguing that evidence not presented to the trial judge showed that Woods was indeed a target when he testified. Woods II, 102 N.E.3d at 965. Although this evidence persuaded the motion judge that Woods was "a target or potential target," the motion judge denied relief, reasoning that Woods I's holding "was not dependent on the factual finding that [Woods] was not a target of the investigation." Id. at 966.

Woods appealed again to the SJC. Woods noted that he had argued on direct appeal that his federal and Massachusetts constitutional rights "were violated when his un-warned (as to self-incrimination rights) grand jury testimony was introduced against him at trial." According to Woods, "the SJC failed to address the merits" of this claim in Woods I, and he attributed this failure to the SJC's acceptance of the trial judge's finding that he had not been a target when he appeared before the grand jury. Pointing to the motion judge's later finding that Woods was in fact a "target or potential target" when he testified, Woods urged the SJC to "reach and resolve" the Fifth Amendment and Massachusetts constitutional questions regarding his testimony's admission.

The SJC affirmed the denial of Woods's motion for a new trial. The court described Woods's argument on direct appeal as

an "objection to the introduction of his grand jury testimony" based on his federal and Massachusetts constitutional rights against compelled self-incrimination. Id. at 965. Woods II explained that the SJC's prior opinion had "rejected the argument that self-incrimination warnings were legally required at the time, thus upholding the trial judge's denial of the defendant's motion in limine." Id. The SJC held that the new evidence presented on collateral appeal did not warrant a new trial because "this court's decision in Woods I upholding the admission of the defendant's grand jury testimony did not depend on the factual finding that the defendant was not a target of the investigation." Id. at 966.

Woods filed a petition for a writ of habeas corpus raising several claims, including that his Fifth Amendment rights were violated by the admission of his grand jury testimony. The district court denied the petition, see Woods v. Medeiros, 465 F. Supp. 3d at 18, and granted Woods a certificate of appealability with respect to his Fifth Amendment claim. This appeal followed.

**II.**

We review de novo the district court's denial of a petition for a writ of habeas corpus. See Linton v. Saba, 812 F.3d 112, 121 (1st Cir. 2016). Like the district court, we must afford significant deference to the SJC's decision under most circumstances. See Lucien v. Spencer, 871 F.3d 117, 122 (1st Cir.

- 8 -

2017). When the SJC has addressed a petitioner's federal claim on the merits, the Antiterrorism and Effective Death Penalty Act (AEDPA) permits a federal court considering a habeas petition to grant it in only two circumstances: (1) if the SJC's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or (2) if the decision on the federal claim was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2). But if the SJC has not addressed the petitioner's federal claim on the merits though the claim was properly presented to it, we review the claim de novo. See Jenkins v. Bergeron, 824 F.3d 148, 152 (1st Cir. 2016).

The Supreme Court has explained that "[w]hen a federal claim has been presented to a state court and the state court has denied relief," we may "presume[] that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 562 U.S. 86, 99 (2011) (presuming adjudication on the merits when the state court summarily rejects all of a defendant's claims); see also Johnson v. Williams, 568 U.S. 289, 301 (2013) (applying the same presumption when a state court opinion "rejects a federal claim without expressly addressing that claim"). This "presumption may be overcome when there is reason to think some

- 9 -

other explanation for the state court's decision is more likely." Richter, 562 U.S. at 99-100.

Woods argues that the SJC never actually addressed his properly presented and precise constitutional argument. Alternatively, he argues that to the extent the SJC addressed his constitutional argument, it did so only on the assumption that he was not a target of the grand jury investigation when called to testify. We find neither argument persuasive.

In Woods I, the SJC acknowledged that Woods was claiming constitutional error in the admission of his grand jury testimony. 1 N.E.3d at 770 ("The defendant argues that, at the time of his testimony before the grand jury, he was a target of the investigation and the Commonwealth was thus required to advise him of his Fifth Amendment right to avoid self-incrimination."). The court then expressly found "that the prosecutor was not required to advise him of his Fifth Amendment rights before eliciting his testimony." Id. Woods points out that he describes his claim not as a right to be advised of his rights when he appeared before the grand jury, but rather as a right not to have his grand jury testimony admitted at his subsequent criminal trial because he had not been so advised. But these two descriptions are two sides of the same coin, with exclusion at trial simply being the ramification of a prior failure to warn. And the SJC certainly understood that the argument on direct appeal trained on the

- 10 -

admission of the grand jury testimony given the absence of a warning. Indeed, in Woods II, the SJC described the argument made prior to Woods I as a challenge "to the introduction of his grand jury testimony." 102 N.E.3d at 965.

That leaves Woods's argument that the SJC only rejected his Fifth Amendment argument because the court assumed he was not a target. This assumption, he argues, allowed the SJC to sidestep the constitutional question. See Commonwealth v. Paasche, 459 N.E.2d 1223, 1225 (Mass. 1984) ("We do not decide constitutional questions unless they must necessarily be reached."). It is true that Woods I affirmed the trial judge's original finding that Woods was not a target. 1 N.E.3d at 770-71. But the SJC in Woods I also expressly considered "[Woods]'s separate argument that the Commonwealth must advise targets or potential targets of the grand jury's investigation of their right not to incriminate themselves." Id. at 771.[1] That argument did not persuade the SJC to grant Woods relief. Instead of holding that Woods's grand jury

---

[1] The SJC's mention of "potential targets" corresponds to the scope of the question presented in Woods's brief, where he argued that "a subject of the grand jury investigation" -- rather than a target -- must be given self-incrimination warnings as a prerequisite to the grand jury testimony's admission at the subject's subsequent criminal trial. Compare U.S. Dep't of Just., Just. Manual § 9-11.151 (2018) (defining a "target" as "a person as to whom the prosecutor or the grand jury has substantial evidence linking him or her to the commission of a crime and who, in the judgment of the prosecutor, is a putative defendant"), with id. (defining a "subject" as "a person whose conduct is within the scope of the grand jury's investigation").

- 11 -

testimony should have been suppressed, the SJC promulgated a prospective, non-constitutional rule regarding when grand jury witnesses must receive self-incrimination warnings. Id. at 772. And, after the motion judge found that Woods had been a target, the SJC stated in Woods II: "[J]ust as the Commonwealth was under no obligation to warn the defendant of his target status, even if he were a target, so too was the Commonwealth under no obligation at that time to advise the defendant of his right against self-incrimination." 102 N.E.3d at 966. Finally, adding belt to suspenders, the SJC stated that the motion judge "did not err" in concluding that "this court's decision in Woods I upholding the admission of the defendant's grand jury testimony did not depend on the factual finding that the defendant was not a target of the investigation." Id.

On this record, Woods cannot overcome the presumption that the SJC addressed Woods's federal claim on the merits. We must therefore review the SJC's ruling under AEDPA's deferential standard. See Jenkins, 824 F.3d at 152-53. That standard, as applied here, forecloses relief on Woods's federal claim. As he concedes, no clearly established Supreme Court precedent holds that the Fifth Amendment is violated when the prosecution introduces grand jury testimony given by a target who was not warned of his privilege against self-incrimination. The absence of such precedent ends the inquiry. See id. at 154 (rejecting

- 12 -

petitioner's habeas claim where "no clearly established law from the Supreme Court" supported his position).

### III.

For the foregoing reasons, we <u>affirm</u> the denial of Woods's petition for a writ of habeas corpus.